UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
NANCY L. JAMES, Chapter 7 Trustee )
                                 )   Civil Case No. C15-1914RSL
                    Plaintiff,   )
       v.                        )
                                 )   ORDER DENYING
JAMES C. PATON, *et al.*,        )   CLARK NUBER'S MOTION FOR
                                 )   SUMMARY JUDGMENT
                    Defendants.  )
_____)

This matter comes before the Court on "Defendant Clark Number's Motion for Summary Judgment of Dismissal With Prejudice of All Plaintiff's Claims." Dkt. # 242. Plaintiff, the bankruptcy trustee, alleges that Clark Nuber was negligent or grossly negligent in the provision of accounting services to the debtor and made critical misrepresentations on which the debtor relied in communicating with the Internal Revenue Service ("IRS"). Plaintiff alleges that Clark Nuber's breach of the duty of care and/or the misrepresentations caused the debtor damages in the amount of at least $20,828,192.11. The Court has already dismissed the trustee's claim for damages in an amount that corresponds to the donations the debtor received using false representations in telephone and direct mail solicitations. Dkt. # 311. Clark Nuber seeks judgment on all remaining claims.

ORDER DENYING CLARK NUBER'S
MOTION FOR SUMMARY JUDGMENT - 1

### A. STANDARD OF REVIEW

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine dispute of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." Krechman v. County of Riverside, 723 F.3d 1104, 1109 (9th Cir. 2013). Although the Court must reserve for the jury genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1049 (9th Cir. 2014); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor. FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties, the Court finds as follows:

### B. NEGLIGENCE AND GROSS NEGLIGENCE

Clark Nuber seeks dismissal of the trustee's negligence and gross negligence claims on the ground that she has not provided admissible expert testimony regarding the standard of care in the professional accounting community. The Court will assume, for purposes of this motion,

that expert testimony is necessary because there are no accreditation requirements, professional standards, statutes, or case law establishing the relevant standard of care and that the facts observable to a lay person and describable without professional training do not, in and of themselves, give rise to an inference of negligence. See Douglas v. Freeman, 117 Wn.2d 242, 248-49 (1991); Ripley v. Lanzer, 152 Wn. App. 296, 306-07 (2009). Clark Nuber acknowledges, as it must, that plaintiff has obtained and offered the reports of Fox & Company Certified Public Accounts LLC, a Washington accounting firm that specializes in tax return and audit work for non-profit entities, Washington public port districts, homeowners' associations, and small- and medium-sized businesses. Fox & Company has provided opinions regarding a professional accounting firm's duties of investigation, disclosure, and communication, Clark Nuber's breach of those duties, and the improper use of joint costs allocation in violation of the relevant standard of care. Dkt. # 282 at 12-13 (summary of opinions). Clark Nuber argues, however, that these opinions should be excluded because Fox & Company (and/or its principal, George Fox) is "not only unqualified to render an expert opinion on the standard of care for tax reporting on and financial statement audits of a not-for-profit . . . organization such as BCPF, but he also repeatedly fails to cite a specific and applicable professional standard in support of plaintiff's negligence, gross negligence or negligent misrepresentation claims." Dkt. # 242 at 6-7.

      Clark Nuber is essentially seeking to exclude an expert witness without discussing Fed. R. Ev. 702 or applying the analysis set forth in Daubert v. Merrell Down Pharm., Inc., 509 U.S. 579 (1993), and Kumho Tire Co. Ltd. v. Carmichael, 526 U.S. 137 (1999). To be admissible, expert testimony must involve scientific, technical, or other specialized knowledge and must be both reliable and helpful. Clark Nuber does not address Fox & Company's skill or knowledge except through a footnote citation to a declaration and an exhibit,[1] nor does it challenge the

---

[1] Clark Nuber attempts to discredit Mr. Fox' experience and expertise by citing to his responses to questions during his deposition which show that his not-for-profit clients have rarely had to contend with the revocation of their tax exempt status or been forced to declare bankruptcy and that he has never

ORDER DENYING CLARK NUBER'S
MOTION FOR SUMMARY JUDGMENT - 3

helpfulness of a professional accountant's opinions in this matter. Rather, Clark Nuber points to the opposing opinions of its experts to argue that plaintiff's evidence is unreliable and faults Fox & Company for failing to support its opinions with references to applicable professional standards.[2] The reports do, however, cite to the relevant tax forms, IRS circulars, statutes, Financial Accounting Standards Board publications, professional codes of conduct, and Generally Accepted Auditing Standards. Clark Nuber makes no attempt to show that Fox & Company's opinions are not based on principles, techniques, or theories that are generally accepted in the accounting profession or that they constitute nothing more than subjective belief or unsupported speculation. Daubert, 509 U.S. at 590. The fact that there is conflicting expert testimony, standing alone, does not make plaintiff's evidence unreliable or inadmissible.

**C. COLLATERAL ESTOPPEL**

Clark Nuber argues that plaintiff is barred from asserting any claim for damages arising from the loss of BCPF's tax exempt status under the doctrine of collateral estoppel. A party asserting collateral estoppel as a bar must prove four elements: "(1) the issue decided in the prior adjudication is identical to the one presented in the current action, (2) the prior adjudication must have resulted in a final judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication, and (4) precluding relitigation of the issue will not work an injustice on the party against whom collateral estoppel is to be applied." Clark v. Baines, 150 Wn.2d 905, 913 (2004). Clark Nuber argues that when the

---

utilized SOP 98-2 or filed a tax return for a not-for-profit entity that utilized telemarketing services. That Mr. Fox has never found himself in exactly the same position as Clark Nuber may lessen the weight of his testimony, but it does not detract from his experience and knowledge regarding the standards to which professional accountants are held.

[2] If, as Clark Nuber's argument suggests, citation to professional standards were a sufficient basis on which to establish and evaluate Clark Nuber's compliance with the standard of care, expert testimony on the matter from either party would run afoul of the helpfulness requirement of the Daubert analysis.

ORDER DENYING CLARK NUBER'S
MOTION FOR SUMMARY JUDGMENT - 4

trustee sought and obtained permission from the bankruptcy court to abandon BCPF's appeal of the revocation of its tax-exempt status, she made an implicit representation to the court that the tax-exempt status was worthless and cannot now claim damages associated with its loss. This same argument was rejected in the context of Clark Nuber's judicial estoppel and law of the case defenses. Dkt. # 315 at 4. It has no more merit when couched in terms of collateral estoppel and certainly does not justify imposition of judgment as a matter of law.

**D. CAUSATION**

As noted above, the Court has already dismissed the trustee's claim for damages in the amount of the donations the debtor received using false representations in telephone and direct mail solicitations. The Court found that plaintiff failed to adequately allege that Clark Nuber's breaches of duty were the "but for" cause of the debtor's promise to use 88-90% of donations to pay for mammograms or of the other directors' failure to correct that misrepresentation. Dkt. # 311. Clark Nuber seeks dismissal of the remaining claims in their entirety because (1) the trustee's acts were an intervening and superseding cause of the damages BCPF seeks to recover and (2) the trustee cannot show reliance.

**1. Superseding Cause**

To be liable for negligence or gross negligence, Clark Nuber's actions must be the proximate cause of the damages claimed by the trustee. "Washington recognizes two elements to proximate cause: cause in fact and legal causation." Lowman v. Wilbur, 178 Wn.2d 165, 169 (2013) (internal quotation marks and alterations omitted). Cause in fact refers to the physical connection between an act and an injury - would the injury have occurred "but for" the act? Wuthrich v. King County, 185 Wn.2d 19, 28 (2016). Legal causation requires courts to consider "logic, common sense, justice, policy, and precedent" when determining how far the consequences of a wrongful act should go. Hartley v. State, 103 Wn.2d 768, 779 (1985). Duty and legal causation are interrelated concepts. The Washington Supreme Court has noted that "the

ORDER DENYING CLARK NUBER'S
MOTION FOR SUMMARY JUDGMENT - 5

policy considerations that support imposition of a duty will often compel the recognition of legal causation, so long as cause in-fact is established under the relevant facts." <u>Lowman</u>, 178 Wn.2d at 171. The separate requirement of legal causation remains, however (<u>Wuthrich</u>, 185 Wn.2d at 28), and "involves a determination of whether liability *should* attach as a matter of law given the existence of cause in fact" (<u>Hartley</u>, 103 Wn.2d at 779 (emphasis in original)).

"An act generally is a proximate cause of an injury if it produces the injury. . . . However, if a new, independent intervening act breaks the chain of causation, it supersedes the defendant's original act and is no longer the proximate cause of the injury." <u>Albertson v. State</u>, 191 Wn. App. 284, 196 (Wn. App. 2015). Clark Nuber argues that the trustee's decision to not appeal the revocation of BCPF's tax exempt status was an intervening act and a superseding cause of the damages claimed by the trustee. When determining whether an intervening act is legally sufficient to operate as a superseding cause, Washington follows Restatement (Second) of Torts § 442 and considers "*inter alia*, whether (1) the intervening act created a *different type of harm* than otherwise would have resulted from the actor's negligence; (2) the intervening act was *extraordinary* or resulted in extraordinary consequences; (3) the intervening act *operated independently* of any situation created by the actor's negligence." <u>Campbell v. ITE Imperial Corp.</u>, 107 Wn.2d 807, 812-13 (1987) (emphasis in original). These considerations do not support a finding that the trustee's decision not to pursue an administrative appeal was a superseding cause of the losses: the harm flowing from that decision is nothing more than a failure to undo or reduce the harm that is attributed to Clark Nuber. Even if the withdrawal of the appeal were extraordinary or otherwise unforeseeable, the resulting harm is not of a different type from that arising from Clark Nuber's alleged negligence, nor was the trustee's decision independent of the situation created by Clark Nuber's conduct. Clark Nuber may be able to reduce its liability by showing that the trustee failed to mitigate BCPF's losses, but her attempts to deal with a crises allegedly caused by defendant does not absolve Clark Nuber of liability for

ORDER DENYING CLARK NUBER'S
MOTION FOR SUMMARY JUDGMENT - 6

its antecedent actions.

**2. Reliance**

The trustee argues that Clark Nuber's breaches of the standard of care and misrepresentations to the IRS allowed BCPF's founder and president, James Paton, to continue a scheme of impermissible self-dealing which not only caused BCPF to breach its fiduciary duties to donors, but also resulted in the revocation of its tax exempt status, causing damage. Causation in this scenario is neither factually nor legally far-fetched. Internally, Clark Nuber acknowledged that "this client needs to have a big red flag on it. There are 3 issues (at least) that cause concern . . . : 1) Jim still owns part of Legacy (even if he is partially retired) and 2) payments to Legacy represent large % of expenses (see United Cancer Council) and 3) calculation of joint costs per SOP 98-2." Dkt. # 198-7 at 25. Those very issues ultimately brought BCPF down. There is evidence from which a reasonable fact finder could conclude that, had Clark Nuber investigated its suspicions regarding Paton's self-dealing, communicated its concerns to the independent board members, appropriately allocated the telemarketing expenses, and/or avoided misrepresentations to the IRS, the injuries of which the trustee complains may have been avoided. As for legal causation, courts have imposed a duty of reasonable care on accountants in the performance of their professional services, such that it is reasonable to hold the accountant liable for the foreseeable results of a breach of that duty.

Rather than identify a defect in the above causal analysis, Clark Nuber relies on <u>Mosier v. Stonefield Josephson, Inc.</u>, 815 F.3d 1161, 1168 (9th Cir. 2016), for the proposition that causation in a professional negligence case can be established only by showing reasonable reliance. <u>Mosier</u> applies California law, however, and has no correlative in Washington law. Just as importantly, the requirement that plaintiff show reliance was a function of the nature of the claims asserted in <u>Mosier</u>. The plaintiff in that case argued that the audits performed by the accountant caused investors to invest, and the Ninth Circuit therefore required a showing that the

ORDER DENYING CLARK NUBER'S
MOTION FOR SUMMARY JUDGMENT - 7

potential investors saw and relied upon the audits. In this case, the Mosier analysis would apply only to the trustee's claim that Clark Nuber's negligence caused donors to be misled: to prevail on that claim, the trustee would be expected to show some sort of reliance on the faulty cost allocation numbers, audits, and/or tax returns, either directly or through the telemarketing and solicitation materials Legacy used. That aspect of plaintiff's claim has already been dismissed, however. Dkt. # 311 at 5-7. With regards to the remaining categories of damages, donor reliance is not necessary. Regardless of what caused an individual to donate to BCPF, once the donation was made, a fiduciary duty arose to manage the funds appropriately and to ensure that they were used for the specified charitable purposes. Nor is donor reliance an issue when determining (a) whether Clark Nuber's failures to investigate, disclose, and/or communicate prevented the independent board members from understanding and avoiding the peril posed by BCPF's relationship with Legacy or (b) whether Clark Nuber's misrepresentations to the IRS contributed to the revocation of BCPF's tax exempt status. To the extent Mosier is applicable, it provides a second justification for dismissing an element of plaintiff's damage claim that is no longer in the case. Factual issues exist as to the causal relationship between Clark Nuber's conduct and the other aspects of plaintiff's damage claim.

**E. IN PARI DELICTO**

Clark Nuber argues that under Washington law BCPF is charged with the acts and knowledge of Paton and that the Court should therefore decline to resolve disputes between two alleged wrongdoers, itself and BCPF.

> The common-law defense at issue in this case derives from the Latin, *in pari delicto potior est conditio defendentis*: 'In a case of equal or mutual fault . . . the position of the [defending] party . . . is the better one.' The defense is grounded on two premises: first, that courts should not lend their good offices to mediating disputes among wrongdoers; and second, that denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality.

Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299, 306 (1985) (footnotes omitted).

ORDER DENYING CLARK NUBER'S
MOTION FOR SUMMARY JUDGMENT - 8

The defense is equitable in nature, is generally confined to situations in which the plaintiff bore at least substantially equal responsibility for the claimed injury, and involves considerations of, *inter alia*, the comparative condition of the parties, whether a confidential relationship exists between them, and whether a public policy or interest suggests that a remedy should be available. Id. "[I]n cases where both parties are *in delicto*, concurring in an illegal act, it does not always follow that they stand *in pari delicto*: for there may be, and often are, very different degrees in their guilt." 1 J. Story, Equity Jurisprudence 304-305 (13th ed. 1886). "Ultimately, a decision as to whether a party is *in pari delicto* relies on public policy considerations and not a neat calculus for determining differential fault. . . . The key to a determination of this nature is whether our decision will be more likely to prevent such illegal transactions in the future." Golberg v. Sanglier, 96 Wn.2d 874, 883 (1982).

       The Court assumes, for purposes of this motion, that the fraud allegedly perpetrated by Paton is attributable to BCPF. Nevertheless, the Court finds that the actual parties in this case are not *in pari delicto*. Clark Nuber correctly points out that, in general, a receiver or bankruptcy trustee stands in the shoes of the debtor and is subject to all defenses that could have been raised against the debtor.

> However, this rule is subject to exceptions; defenses based on a party's unclean hands or inequitable conduct do not generally apply against that party's receiver. . . . While a party may itself be denied a right or defense on account of its misdeeds, there is little reason to impose the same punishment on a trustee, receiver or similar innocent entity that steps into the party's shoes pursuant to court order or operation of law. Moreover, when a party is denied a defense under such circumstances, the opposing party enjoys a windfall. This is justifiable as against the wrongdoer himself, not against the wrongdoer's innocent creditors.

FDIC v. O'Melveny & Myers, 61 F.3d 17, 19 (9th Cir. 1995) (internal citations omitted). See also Nicholson v. Orthodontic Ctrs. of Wash., Inc., 144 Wn. App. 1048, *5 (2008) (applying the *in pari delicto* doctrine where the corporate wrongdoer stands in its own shoes, but noting that "the defense of *in pari delicto* loses its sting when the person who is *in pari delicto* is

ORDER DENYING CLARK NUBER'S
MOTION FOR SUMMARY JUDGMENT - 9

eliminated" and distinguishing cases in which "[t]he appointment of the receiver removed the wrongdoer from the scene."); contra In re KSL Media, Inc., 2016 WL 3549166, at * 8-9 (Bankr. C.D. Cal. June 21, 2016) (concluding that a bankruptcy trustee "may not use his status as an innocent successor to insulate the debtor from the consequences of its wrongdoing"). Considerations regarding public policy and the parties who are actually before the Court lead to the conclusion that, if Clark Nuber negligently performed the professional services for which BCPF hired it, any wrongdoing imputed to the debtor should not, in equity, create an absolute bar to the trustee's claims against Clark Nuber on behalf of the estate and, ultimately, the debtor's creditors. As the Ninth Circuit noted in O'Melveny & Myers, the trustee did not voluntarily step into the shoes of the debtor but was instead appointed to protect the interests of third parties, and the bankruptcy scheme would be frustrated if BCPF's assumed inequitable conduct were imputed to the trustee. 61 F.3d at 19.

For all of the foregoing reasons, Clark Nuber's motion for summary judgment (Dkt. # 242) is DENIED.

Dated this 25th day of January, 2017.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge