UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
NANCY L. JAMES, Chapter 7 Trustee  )
                                   )   Civil Case No. C15-1914RSL
                       Plaintiff,  )
        v.                         )
                                   )   ORDER GRANTING TRUSTEE'S
JAMES C. PATON, *et al.*,          )   MOTION FOR SUMMARY
                                   )   JUDGMENT REGARDING JOINT
                       Defendants. )   COST ALLOCATION
_____)

This matter comes before the Court on the "Trustee's Motion for Partial Summary Judgment Regarding Joint Cost Allocation" (Dkt. # 253) and defendant Clark Nuber's cross-motion on the same issue (Dkt. # 273).[1] Plaintiff, the bankruptcy trustee, seeks a summary determination that the debtor Breast Cancer Prevention Fund ("BCPF") improperly used joint cost allocation under Statement of Position ("SOP") 98-2 of the American Institute of Certified Public Accountants.[2] Defendants maintain that this issue cannot be resolved without expert testimony and that the trustee's failure to offer an expert's opinion regarding the application of

---

[1] The Court declines to strike Clark Nuber's cross-motion or to impose sanctions for its filing. The Court has the power to grant judgment for a non-moving party if the papers submitted show that there is no genuine issue of fact and that the law favors the non-movant. Clark Nuber's explicit request for the relief authorized in Fed. R. Civ. P. 56(f) in the context of its opposition papers is not sanctionable.

[2] SOP 98-2 is now known as ASC 958-720.

ORDER GRANTING TRUSTEE'S MOTION FOR
SUMMARY JUDGMENT REGARDING JOINT
COST ALLOCATION - 1

SOP 98-2 to the facts of this case compels entry of judgment in defendants' favor.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine dispute as to any material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." Krechman v. County of Riverside, 723 F.3d 1104, 1109 (9th Cir. 2013). Although the Court must reserve for the jury genuine issues regarding credibility, the weight of the evidence, and legitimate inferences, the "mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient" to avoid judgment. City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1049 (9th Cir. 2014); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. S. Cal. Darts Ass'n v. Zaffina, 762 F.3d 921, 925 (9th Cir. 2014). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor. FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[3] and taking the evidence in the light most favorable to defendants, the Court finds as follows:

---

[3] The requests to strike are denied.

ORDER GRANTING TRUSTEE'S MOTION FOR
SUMMARY JUDGMENT REGARDING JOINT
COST ALLOCATION - 2

Defendant James C. Paton founded defendant Legacy Telemarketing Corporation in 1992 to provide telemarketing services to both non-profit and for-profit companies. In 2004, Paton incorporated BCPF as a not-for-profit organization. BCPF contracted with Legacy to perform certain program and fundraising activities. BCPF retained Clark Nuber, a certified public accounting firm, to complete its tax returns for the 2005-2011 tax years and to conduct audits in 2009-2011. Because the services Legacy rendered included both educational/mission-oriented communications and a fundraising solicitation, BCPF, in consultation with Clark Nuber, had to determine whether there was a reasonable method by which it could allocate the fees paid to Legacy between bona fide non-fundraising exempt purposes and fundraising. Joint costs – those incurred in a combined educational campaign and fundraising solicitation – cannot be allocated to program service expenses unless the charitable organization follows SOP 98-2.

In order to qualify as a joint cost that is eligible for allocation, the purpose of the activity must, at least in part, further the charity's mission and not just raise funds. SOP 98-2 at ¶¶ .08. The Court will assume for purposes of this motion that Legacy's telemarketing script included a call for specific action by the audience that would help accomplish BCPF's mission, thereby satisfying the first part of the "purpose" criteria. SOP 98-2 at ¶ .09. The issue, however, is whether the BCPF-Legacy relationship satisfies the factors set forth in SOP 98-2 at ¶ .10. The first factor, which is identified as the "preeminent guidance," states "[t]he purpose criterion is *not* met if a majority of compensation or fees for any party's performance of any component of the discrete joint activity varies based on contributions raised for that discrete joint activity." SOP 98-2 at ¶ .10a (emphasis in original). The parties disagree as to whether this factor is satisfied.

Legacy's contract with BCPF specified that Legacy would bill BCPF for services rendered at rates set forth in a "Marketing Services Agreement PART II." Dkt. # 271-4 at 8. If

ORDER GRANTING TRUSTEE'S MOTION FOR
SUMMARY JUDGMENT REGARDING JOINT
COST ALLOCATION - 3

this were a standard times and materials contract, the BCPF-Legacy agreement would undoubtedly satisfy ¶ .10a because Legacy's compensation would not vary with or be influenced by the amount of contributions raised. The contract further states, however, that regardless of the amount of time and materials spent in a given month, Legacy was entitled to collect no more than 80% of the funds raised in that month. The contract authorized Legacy to carry forward any unpaid balance in the hopes of recouping it in the future when costs were less than normal and/or contributions were more than normal. Footnote 6 of SOP 98-2 addresses this situation:

> Some compensation contracts provide that compensation for performing the activity is based on a factor other than contributions raised, but not to exceed a specified portion of contributions raised. For example, a contract may provide that compensation for performing the activity is $10 per contact hour, but not to exceed 60 percent of contributions raised. In such circumstances, compensation is not considered based on amounts raised, unless the stated maximum percentage is met. In circumstances in which it is not yet known whether the stated maximum percentage is met, compensation is not considered based on amounts raised, unless it is probable that the stated maximum percentage will be met.

The question is, therefore, whether the stated maximum percentage was actually met or would probably be met in the BCPF-Legacy arrangement. While this could be an issue of fact in certain circumstances, the answer is not reasonably in dispute in this case. In every month of their relationship, right up until the time that BCPF attempted to termination the agreement, Legacy was paid 80% of the amount of contributions raised. Dkt. # 272-1 and # 272-2. The 80% maximum was, as a matter of fact, met in every month of each preceding tax year. In these circumstances, Legacy's compensation is deemed based on amounts raised under SOP 98-2 at ¶ .10a.

Defendants highlight the carryover provision, arguing that because Legacy had a claim to additional funds (over the 80%) that increased and decreased over time, its compensation was not based on the success of its fundraising efforts. This argument is illogical and unpersuasive.

ORDER GRANTING TRUSTEE'S MOTION FOR
SUMMARY JUDGMENT REGARDING JOINT
COST ALLOCATION - 4

First, SOP 98-2 provides guidance on how to evaluate and characterize the many creative payment arrangements parties may use in an effort to claim fundraising expenses as program expenses. No matter how detailed the time and materials list or how complicated the invoicing, if the end result is that the stated maximum percentage is or probably will be met, Legacy's compensation is deemed to be based on the contributions it raised and the purpose criterion is not satisfied. The carryover provision in no way changes this fundamental reality or the application of SOP 98-2 to the facts of this case. Second, the carryover provision did not, from September 2005 until the second version of the contract was signed in March 2011, entitle Legacy to recover more than 80% of contributions at some future date. The initial contract makes clear that BCPF will receive no less than 20% of the contributions raised in a given month and that Legacy's share "may never exceed 80%." Dkt. # 271-4 at 4 and 8. There was no termination or adjustment provision that would allow Legacy to recover carried over costs that exceed the 80% maximum.[4] Finally, the carryover provision's real world effect – both before and after the March 2011 revision – was to allow Legacy to spread costs over time so that, even if there were a month in which the 80% maximum would not have been reached, Legacy's carried over costs would entitle it to the full 80%. While there was a moment in time at the beginning of the relationship where one might not be able to predict with any degree of confidence whether Legacy's payment would reach the 80% maximum on a regular basis, as soon as Legacy ran up a "deferred balance" of over $170,000 in the first month, it was at least "probable that the stated maximum percentage w[ould] be met" thereafter. And, in fact, it was. Thus, the carryover provision on which defendants rely actually increased the chances that the compensation arrangement would not satisfy the purpose criterion of SOP 98-2.

---

[4] A new provision was added to the March 2011 contract that allowed Legacy to recover any deferred amounts due from future donations if BCPF terminated the contract, regardless of whether the recovery would increase Legacy's percentage above 80%. Dkt. # 255-1 at 56.

ORDER GRANTING TRUSTEE'S MOTION FOR
SUMMARY JUDGMENT REGARDING JOINT
COST ALLOCATION - 5

Defendants argue that the trustee is not entitled to summary judgment on the issue of whether BCPF was entitled to utilize joint cost allocation because she has not provided a supporting expert opinion and because their experts have opined that, for example, they "do not view this [BCPF-Legacy] contract as prohibiting joint cost allocation pursuant to SOP 98-2." Dkt. # 271-1 at 49.[5] It is not clear what issue requires professional training or expertise in this instance. The language of SOP 98-2 is not ambiguous or technical. Judges regularly interpret contracts, statutes, regulations, and guidelines using common rules of construction. Recourse to an expert is rarely, if ever, necessary. As the above discussion shows, SOP 98-2 includes standard, non-technical words with well-accepted, ordinary meanings. Even if expert testimony will be necessary to establish the standard of care that governed Clark Nuber's evaluation of the joint cost allocation issue (*i.e.*, what investigations and actions Clark Nuber should have undertaken when deciding whether joint cost allocation could be used), the application of the guideline to the facts of this case does not require any specialized training, education, or experience.

In his latest declaration, Michael G. Ueltzen, Clark Nuber's expert, opines that the last sentence of SOP 98-2, fn. 6 requires "an assessment of the 'compensation contract' by an auditor, who is licensed to use professional judgment as a CPA by the state in which the audit is performed, as to whether 'it is probable the stated maximum percentage would be met' under all the terms of the 'compensation contract.'" Dkt. # 274 at ¶ 14. There is no linguistic or contextual support for such a "requirement," nor would it further the purposes of the SOP. The undisputed facts of this case are that BCPF paid Legacy 80% of the contributions raised in every month of each tax year for which Clark Nuber filed returns and that, at any given moment, Legacy had

---

[5] Of course, the IRS examiner agrees with the trustee's position, finding that the BCPF-Legacy contract provided compensation at a specified portion of the contributions raised and therefore failed the purpose criterion. Dkt. # 271-2 at 24.

ORDER GRANTING TRUSTEE'S MOTION FOR
SUMMARY JUDGMENT REGARDING JOINT
COST ALLOCATION - 6

built up a reservoir of carried over costs that made it highly unlikely that the maximum percentage would not be reached, both as a matter of historic charges and projected balances. By any definition of the word "probable," a near certainty qualifies. Thus, the contract ran afoul of both "unless" clauses in Footnote 6 and the Court can, as a matter of law and without the aid of expert testimony, conclude that the purpose criterion was not met. SOP 98-2, n.7. BCPF was therefore not entitled to use joint cost allocation. Mr. Ueltzen's expertise may be called upon to explain why Clark Nuber should not have been expected to know this, but the trustee has not sought a finding of negligence at this point.

      Finally, the Paton defendants raise a one sentence objection to the entry of summary judgment on the ground that the trustee has failed to specify with particularity the claim or defense to which BCPF's use of joint cost allocation pertains. The importance of this issue is obvious and has been recognized by the parties since the first motions were filed. The trustee intends to prove that BCPF utilized joint cost allocation to mislead regulators, taxing authorities, and donors regarding the percentage of donations that went towards program services and that Clark Nuber's use of joint cost allocation in preparing BCPF's tax returns constituted a breach of the duty of reasonable care, gross negligence, and a misrepresentation to the IRS. A ruling on this issue moves each of these claims further toward resolution.

//

//

ORDER GRANTING TRUSTEE'S MOTION FOR
SUMMARY JUDGMENT REGARDING JOINT
COST ALLOCATION - 7

For all of the foregoing reasons, plaintiff's motion for summary judgment (Dkt. # 253) is GRANTED. The Court finds that BCPF was not entitled to utilize joint cost allocation during the relevant time frame. Defendant Clark Nuber's cross motion for summary judgment (Dkt. # 273) is DENIED.

Dated this 25th day of January, 2017.

Robert S. Lasnik
United States District Judge

ORDER GRANTING TRUSTEE'S MOTION FOR
SUMMARY JUDGMENT REGARDING JOINT
COST ALLOCATION - 8